IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CYRIACUS OKORO and
HENRIETTA OKORO,                          *

    Plaintiffs,                                   *

    v.                                                  *                    Civil Action No. PX 16-0616

WELLS FARGO BANK, N.A., *et al.*,       *

    Defendants.                                   *
                                   ******

## MEMORANDUM OPINION

Henrietta and Cyriacus Okoro (collectively, "Plaintiffs" or the "Okoros"), proceeding *pro se*, filed a Complaint against the Federal National Mortgage Association, Hudson City Savings Bank, FSB, M&T Bank, M&T Corporation, The Alba Law Group, P.A., Wells Fargo Bank, N.A., and Wells Fargo Home Mortgage Inc. (collectively, "Defendants"). Plaintiffs bring this action against Defendants for violations of the Real Estate Settlement and Procedures Act ("RESPA") and Fair Debt Collection Practices Act ("FDCPA") in connection with the Defendants' acceleration of their Promissory Note and an attempt to enforce their security interest. Plaintiffs also allege state law claims based upon the same course of conduct.

Currently pending before the Court are Defendants' Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (ECF Nos. 20, 23, and 24). The relevant issues have been fully briefed and the court now rules pursuant to Local Rule 105.6 because no hearing is necessary. For the reasons set forth below, the Court will GRANT Defendants' Motion to Dismiss.

# I.   BACKGROUND[1]

This matter arises out of foreclosure proceedings filed with respect to Plaintiffs' property located at 7211 Oakley Road, Glenn Dale, Maryland 20769 (the "Property"). *See* ECF No. 1-1.

On October 31, 2006, the Plaintiffs executed a promissory note (the "Note") in the original principal amount of $681,200 payable to Hovnanian American Mortgage, LLC ("Hovnanian"), secured by a deed of trust executed by Plaintiffs on the Property (the "Deed of Trust"). ECF Nos. 1-1, 1-2. Hovnanian subsequently executed and attached an allonge to the Note bearing a special indorsement, thereby making the Note payable to Wells Fargo Bank, N.A. ("Wells Fargo").[2] ECF No. 1-1 at 5. Wells Fargo then added a blank indorsement on the allonge, making the Note payable to the holder of the Note.[3] ECF Nos. 1 at 7, 1-1. Wells Fargo remained the Loan Servicer throughout the life of the loan. *See* ECF No. 1 at 3–4, 36–37.

Plaintiffs allege that after Hovnanian sold their loan to Wells Fargo, the loan was securitized in a pool to Federal National Mortgage Association ("Fannie Mae") "sometime in 2009." (ECF No. 1 at 3 n.3). Plaintiffs further allege that Fannie Mae owns the loan and the servicing of the loan was governed by the Fannie Mae Single Family Servicing Guide. ECF No. 1 at 5. But despite Plaintiffs' bald assertion, the loan documentation attached to and incorporated in the Complaint nowhere mentions Fannie Mae as an involved lender or servicer. ECF No. 1 at 3 n.3.

---

[1] In considering Defendants' Motions to Dismiss, the Court relies upon the facts alleged in the complaint, materials attached thereto, as well as matters of public record. *See Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). All facts are viewed in the light most favorable to Plaintiffs.

[2] "An allonge is generally a slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." *Deutsche Bank Nat. TrustCo. v. Brock,* 63 A.3d 40, 42 (Md. 2013) (citation and internal quotation marks omitted). Pursuant to Md. Code Ann., Com. Law § 3-204(a), an allonge is considered to be a part of the Note. *See id.*

[3] *See* Md. Code Ann., Com. Law § 3-205(b) ("If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a 'blank indorsement.' When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed.").

Rather, those loan documents that Plaintiffs chose to provide the Court, as incorporated in their Complaint, reflect that Hovnanian executed a Corporate Assignment of Deed of Trust (the "Assignment") to Bank of America on October 14, 2011; and then Bank of America Assigned the Deed of Trust to Hudson City Savings Bank FSB ("Hudson City")[4] on May 25, 2012. ECF Nos. 1-3, 1-7. The Deed of Trust states that "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." *Id.* at 12. The Deed of Trust also clearly states that Plaintiffs' obligations remain the same, regardless of whether the Note is sold: "If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser." *Id.*

In 2009, Plaintiffs defaulted on the Note. ECF Nos. 1 at 9, 11; *see also* ECF No. 1-5. To forestall the expected foreclosure, they asked for and allegedly received a trial modification agreement from Wells Fargo also known as a Trial Period Plan ("TPP") under the Home Affordable Modification Program ("HAMP"). ECF No. 1 at 10; *see also* ECF No. 1-4. However, the documents that Plaintiffs chose to attach to their Complaint and incorporate by reference belie that any agreement was ever reached. Rather, Plaintiffs provide only a completed application that was not signed by any lender. ECF No. 1-4. Indeed, Plaintiffs even aver elsewhere in their Complaint that they never received approval for a final loan modification, ECF No. 1 at 12, yet also claim that they made monthly payments under the trial modification, and later, forbearance. ECF No. 1 at 11, n.10; *see also* ECF No. 1-5.

---

[4] Wells Fargo Bank, N.A. ("Wells Fargo") and Manufacturers and Traders Trust Company, a/k/a M&T Bank, are successors by merger to Hudson City and thus are proper parties in this action. ECF No. 24 at 1.

Plaintiffs' also claim that they complained in writing to the Office of Thrift Supervision ("OTS") in early 2011 based on their rejection from the HAMP program in 2009. OTS responded and attached direct correspondence from Hudson City verifying that Hudson City does not participate in HAMP but would be willing to discuss a possible forbearance agreement with Plaintiffs. ECF No. 1-6; ECF No. 1 at 12–13, 18–19. Plaintiffs aver that Hudson City's representations in March of 2011 as the owner of the note were false because it was not until May 25, 2012 that Hudson City was assigned the Deed of Trust. ECF No. 1 at 13. Plaintiffs claim that Hudson City was merely a servicer of the Note. ECF No. 1 at 15–16.

On May 22, 2013, Defendants initiated foreclosure proceedings. *See Dore v. Okoro*, Case No. CAE 13-08379 (the "Foreclosure Action"); ECF No. 1 at 18; *see also* ECF No. 1-8. Five attorneys employed by The Alba Law Group, P.A. ("Alba") were appointed as substitute trustees in connection with those proceedings. ECF No. 1 at 13–14; ECF No. 1-8 (a copy of the Declaration of Substitution of Trustees).

On June 14, 2014, Plaintiffs sent Wells Fargo a letter that they characterize as a Qualified Written Request ("QWR"), pursuant to § 2605(e) of RESPA, requesting information regarding the historic transfer of the Note and Deed of Trust. ECF No. 1 at 15; ECF No. 1-9. Plaintiffs then filed for bankruptcy relief on February 16, 2016.[5] *In re: Henrietta Okoro and Cyriacus Okoro*, Bankr. D. Md., Case No.: 16-11751 (Chapter 7) [hereinafter "Bankruptcy Proceeding"]. The Foreclosure Action remains pending and is currently stayed in light of Plaintiffs' bankruptcy. *See* ECF No. 20-3 at 2. Plaintiffs allege that in the Bankruptcy Proceeding, Hudson City and Wells Fargo filed a fraudulent proof of claim which included a forged version of the Note, fraudulently

---

[5] Plaintiffs previously sought bankruptcy relief on September 30, 2013, *In re: Cyriacus Okoro and Henrietta Okoro*, United States Bankruptcy Court for the District of Maryland, Case No.: 13-26641 (Chapter 13), which was dismissed for failure to confirm a plan on October 27, 2015.

produced by placing the indorsement on a scanned image in accordance with Wells Fargo policies to create forgeries. ECF No. 12 at 3.

On March 3, 2016, Plaintiffs filed the instant Complaint (ECF No. 1) and later, on April 9, 2016, an Amended Complaint (ECF No. 12), cumulatively asserting fourteen claims, including fraud (Counts I, II, III, XIV), [6] negligence (Counts II, X), civil conspiracy (Count IV, XIII), tortious interference with contract (Count VII), and violations of the Maryland Consumer Debt Collection Act ("MCDCA") (Count V), Maryland Consumer Protection Act ("MCPA") (Count VI), Fair Debt Collection Practices Act ("FDCPA") (Count VIII), and Real Estate Settlement and Procedures Act ("RESPA") (Count IX, XI, XII).

Bringing claims under common law, the MCDCA, and MCPA against Wells Fargo, Hudson City, and Alba, Plaintiffs principally allege that Wells Fargo and Hudson City falsely held out Hudson City as the lender and holder of the Note. [7] Without ownership, Plaintiffs claim, Hudson City never had authority to deny Plaintiffs a HAMP-based loan modification. ECF No. 1 at 22. Plaintiffs contend that Hudson City and Wells Fargo conspired to present Hudson City as the owner of Plaintiffs' loan so as to have a justifiable excuse for denying Plaintiffs' loan modification in 2009. ECF No. 1 at 16. Additionally, because Hudson City deceitfully represented itself to be the investor or owner, Plaintiffs were "fraudulently deprived" of their opportunity for a loan modification in February 2011. ECF No. 1 at 14. They also allege that, when Hudson City did not own the loan, Wells Fargo converted their mortgage payments and "may not have credited some or all of such payments to Plaintiffs' account." ECF No. 1 at 14–

---

[6] Although Count II and III, are labeled "negligent/wrongful acceleration of the note" and "negligence," in substance the Plaintiffs plead facts alleging fraud during the denial of a HAMP modification and the foreclosure proceedings. ECF No. 1 at 23–26.

[7] The Original Complaint also asserted a claim for fraudulent representations as to Fannie Mae, which Plaintiffs withdrew on April 12, 2016, noting that Fannie Mae was included due to a "clerical error." ECF No. 12 at 1.

15. Wells Fargo then sought to conceal its alleged fraud and misapplication of Plaintiffs' interest payments. ECF No. 1 at 15. Asserting that, in 2009, they should have received a final loan modification, Plaintiffs allege that, over the next seven years, they lost time and money, incurred myriad fees, and suffered physical and mental pain and anguish attempting to obtain a loan modification. ECF No. 1 at 17–18. Plaintiffs also claim that Wells Fargo violated RESPA by not responding to Plaintiffs' 2014 written request for information disclosing the identity of the Note holder, ECF No. 1 at 15, and Wells Fargo's proof of claim filed in Bankruptcy Court attaches a forged note, thus breaching the "duty of care . . . imposed to protect the debtor from fraud and abuse by creditors . . . in filing a proof of claim." ECF No. 12 at 12. With regards to Fannie Mae, Plaintiffs allege that the application of the Fannie Mae servicing guidelines deceives homeowners, and Fannie Mae conspired against the Plaintiffs. ECF No. 1 at 38.

On April 8, 2016, Plaintiffs filed an adversary proceeding in the Bankruptcy Court alleging similar facts and circumstances and seeking declaratory relief from the Bankruptcy Court. *See Okoro v. Wells Fargo*, Adversary No.: 16-00185, ECF No. 1. Defendants contended that Plaintiffs lacked standing in the adversary proceeding. On June 6, 2016, the Plaintiffs filed a motion for an order of abandonment of the present action with the Bankruptcy Court, and the Trustee did not object. *See* Bankruptcy Proceedings, ECF 50. On June 28, 2016, the Bankruptcy Court entered an order determining that the present action is abandoned property pursuant to 11 U.S.C. §554 and Fed. R. Bankr. P. 6007. *See* Bankruptcy Proceedings, ECF 51; ECF No. 34-1 (June 28, 2016, Order of Abandonment). Then, on August 8, 2016, the Bankruptcy Court dismissed the adversary proceeding for lack of jurisdiction after finding that the Order of Abandonment removed the cause of action from the jurisdiction of the bankruptcy case. *Okoro v. Wells Fargo*, Adversary No.: 16-00185, ECF No. 32 at 4–5.

On May 20, 2016, Alba filed a Motion to Dismiss. ECF No. 20. On May 31, 2016,

Fannie Mae filed a Motion to Dismiss, ECF No. 23, and Hudson City and Wells Fargo filed their

Joint Motion to Dismiss. ECF No. 24. For the reasons that follow, all three motions to dismiss

will be GRANTED.

## II.     STANDARD OF REVIEW

Due to the contemporaneous bankruptcy proceedings, Defendants challenge Plaintiffs'

standing to bring the instant action before this Court. Standing is an element of subject matter

jurisdiction, thus Defendants' Motions to Dismiss for lack of standing should be treated under

Fed. R. Civ. P. 12(b)(1). *See White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005);

*Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc.*, 145 F.3d 660, 661–62 (4th Cir. 1998)

(affirming the district court's dismissal of the complaint for lack of standing pursuant to Rule

12(b)(1)). The existence of subject matter jurisdiction is a threshold issue the court must address

before considering the merits of the case. *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422

(4th Cir. 1999).

Defendants also move to dismiss under Fed. R. Civ. P. 12(b)(6), arguing that Plaintiffs'

Complaint and Amended Complaint fail to state a claim. The purpose of a motion to dismiss

under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*,

464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). Plaintiffs are

proceeding *pro se*, and their Complaint and Amended Complaint are to be construed

liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, liberal construction does

not absolve Plaintiffs from pleading plausible claims. *See Holsey v. Collins*, 90 F.R.D. 122, 128

(D. Md. 1981) (citing *Inmates v. Owens*, 561 F.2d 560, 562–63 (4th Cir. 1977)). As the Fourth

Circuit made clear:

> It is neither unfair nor unreasonable to require a pleader to put his complaint in an intelligible, coherent, and manageable form, and his failure to do so may warrant dismissal. *Corcoran v. Yorty*, 347 F.2d 222, 223 (9th Cir.), *cert. denied*, 382 U.S. 966 (1965); *Holsey v. Collins*, 90 F.R.D. 122, 128 (D.Md.1981). District courts are not required to be mind readers, or to conjure questions not squarely presented to them. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985), *cert. denied*, 475 U.S. 1088 (1986).

*Harris v. Angliker*, 955 F.2d 41, 1992 WL 21375, at *1 (4th Cir.1992) (per curiam).

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion to dismiss, "[t]he court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-

1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see also CACI Int'l v. St. Paul Fire &*

*Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); Fed. R. Civ. P. 10(c) ("A copy of a written

instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). To be

"integral," a document must be one "that by its 'very existence, and not the mere information it

contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal*

*Sparrows Point, LLC*, 794 F.Supp.2d 602, 611 (D.Md.2011) (citation and emphasis omitted).

Here, the Note, the Deed of Trust, the Declaration of Substitution of Trustees, and the

Assignment are referenced in the Complaint and are integral, as they provide the basis for the

parties' rights to the Property. Accordingly, these documents may be considered without

converting the motion into one for summary judgment.

 Moreover, where the allegations in the complaint conflict with an attached written

instrument, "the exhibit prevails." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d

1462, 1465 (4th Cir. 1991); *see Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853,

2011 WL 1375970, at *2–3 (D. Md. Apr. 12, 2011). "When the plaintiff attaches or incorporates

a document upon which his claim is based, or when the complaint otherwise shows that the

plaintiff has adopted the contents of the document, crediting the document over conflicting

allegations in the complaint is proper." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 167 (4th

Cir. 2016). Additionally, Fed. R. Evid. 201(b)(2) permits the Court to take judicial notice of

"fact[s] that [are] not subject to reasonable dispute because [they] can be accurately and readily

determined from sources whose accuracy cannot reasonably be questioned," such as matters of

public record. Fed. R. Evid. 201(b)(2); *see Alston v. Wells Fargo Home Mortg.*, No. TDC-13-

3147, 2016WL 816733, at *1 n.1 (D. Md. Feb. 26, 2016).

"When a plaintiff alleges fraud or when 'the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud.' [Federal Rule of Civil Procedure] 9(b) requires that 'the circumstances constituting fraud be stated with particularity.'" *Haley v. Corcoran*, 659 F. Supp. 2d 714, 721 (D. Md. 2009) (quoting *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000); Fed. R. Civ. P. 9(b)). To satisfy this standard, plaintiffs "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (internal quotation marks and citation omitted). "These facts are often referred to as the 'who, what, when, where, and how' of the alleged fraud." *Id.* (quoting *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.,* 336 F.3d 375, 384 (5th Cir. 2003)). Rule 9(b) provides the defendant with sufficient notice of the basis for the plaintiff's claim, protects the defendant against frivolous suits, eliminates fraud actions where all of the facts are learned only after discovery, and safeguards the defendant's reputation. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citation omitted). Fraud allegations that fail to comply with Rule 9(b) warrant dismissal under Rule 12(b)(6). *Id.* at 783 n.5.

## III.    DISCUSSION

### A.  Standing

Defendants first challenge Plaintiffs' standing to bring this action in light of contemporaneous bankruptcy proceedings. However because the bankruptcy court granted Plaintiffs' motion to abandon the pending cause of action as part of the Estate, and the Trustee did not object, *see* 11 U.S.C. §554 and Fed. R. Bankr. P. 6007, the bankruptcy case has no effect

here. *See* Bankruptcy Proceedings, ECF No. 50-51. This is because once the subject of this

action is abandoned and thus no longer part of the bankruptcy proceedings, Plaintiffs have

acquired standing to pursue this action. *See Nicholas v. Green Tree Servicing, LLC*, No. TDC-

15-1279, 2016 WL 1169958, at \*3 (D. Md. Mar. 25, 2016) (citing *Nat'l American Ins. Co. v.*

*Ruppert Landscaping Co.*, 187 F.3d 439, 441 (4th Cir. 1999)); *Miller v. Pac. Shore Funding*, 287

B.R. 47, 50–51 (D. Md. 2002), *aff'd*, 92 F. App'x 933 (4th Cir. 2004) ("A debtor regains

standing to bring claims that accrued pre-petition if those claims are abandoned").

Defendants Hudson City and Wells Fargo also note the duplicative proceeding in

Bankruptcy Court where the Plaintiffs brought a complaint similar to this case. But now that the

Bankruptcy Court has dismissed the Plaintiffs' adversary proceeding for want of jurisdiction

(*Okoro v. Wells Fargo*, Adversary No.: 16-185, ECF No. 32 at 4–5), Defendants' averment of a

duplicative proceeding is moot. Accordingly, Plaintiffs have standing to bring this case.

## B. FDCPA, MCPA, and Common Law Claims against Wells Fargo and Hudson City for Pre-Foreclosure Representations (Counts I, II, and VI-VIII)

The Court now turns to whether Plaintiffs' individual causes of action survive

Defendants' motion to dismiss.

Wells Fargo and Hudson City argue that all of the Plaintiffs' claims against them are

time-barred because the purported wrongdoing that undergirds the Plaintiffs' claims occurred no

later than March 11, 2011, when Hudson City held itself out to be the mortgagee in denying

Plaintiffs' HAMP application. ECF No. 24-1 at 21–24. Plaintiffs' response, liberally construed,

is that their claims are saved under Maryland's discovery rule, a common-law exception to the

Maryland three-year limitations period and the FDCPA's one-year limitations period. This Court

finds that the discovery rule cannot save those claims which turn on Hudson City's purported

misrepresentations as the lender and holder of the Note.

The discovery rule "tolls the accrual date of the action until such time as the potential plaintiff either discovers his or her injury, or should have discovered it through the exercise of due diligence." *Poole v. Coakley & Williams Const., Inc.*, 423 Md. 91, 130 (2011) (internal citations and quotation marks omitted); *see also Dashiell v. Meeks*, 396 Md. 149, 168–69 (2006); *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 95 (2000); *Stewart v. Bierman*, 859 F. Supp. 2d 754, 760 (D. Md. 2012), *aff'd sub nom. Lembach v. Bierman*, 528 F. App'x 297 (4th Cir. 2013) ("This Court . . . has also applied the discovery rule in the debtor rights context and held that a FDCPA claim accrues at the time of the violation or when the plaintiff should have known of the violation."). Under the discovery rule, the Court must determine when the claimant gained actual knowledge of facts sufficient to cause "an ordinarily diligent plaintiff to make an inquiry or investigation that an injury has been sustained." *Georgia-Pac. Corp. v. Benjamin*, 394 Md. 59, 89 (2006). The limitations clock begins to run, however, at the beginning of such diligent investigation, not the end. *Lumsden v. Design Tech Builders, Inc.*, 358 Md. 435, 447–48 (2000); *see also Brown v. Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.*, 731 F. Supp. 2d 443, 449 (D. Md. 2010) ("[W]hen a claimant gains knowledge sufficient to put her on inquiry she is charged, as of that date, with knowledge of facts that would have been disclosed by a reasonably diligent investigation, . . . regardless of whether such an investigation was conducted or was successful.") (internal citations and quotation marks omitted).

Plaintiffs admit that Wells Fargo's and Hudson City's alleged misrepresentations took place during the months of February and March of 2011 when the Plaintiffs contacted the Office of Thrift Supervision and discovered Hudson City held itself out as the lender and did not participate in HAMP. ECF No. 1-6; ECF No. 1 at 12–13, 18–19. Specifically, Plaintiffs claimed injuries arising from these alleged misrepresentations occurred during and immediately

thereafter, as their monthly payments were paid to Wells Fargo, and Plaintiffs were denied a loan modification in February 2011. ECF No. 1 at 14.

But in June of 2012, the Deed of Trust was indisputably assigned to Hudson City, and was filed with the Prince George's County Clerk of Court. ECF No. 1-7. This filing undoubtedly would put any reasonable Plaintiff exercising ordinary due diligence on specific notice of possible "fraud" in Hudson City's representation that it was the holder of the note in March of 2011 when the Assignment of the Deed of Trust did not occur until June 2012. By June 2012, therefore, Plaintiffs were clearly armed with enough information regarding Hudson City's potential misrepresentations to trigger a reasonable plaintiff's diligent investigation of any potential causes of action.

Plaintiffs, however, make much of the original Note's blank indorsement which they claim somehow perpetuated the fraud. Even assuming the truth of Plaintiffs' assertions, the status of the blank Note was neither unknowable, nor undiscoverable, during the limitations period. *Cf. Benjamin v. Union Carbide Corp.*, 162 Md. App. 173, 193 (2005), *abrogated on other grounds by Mummert v. Alizadeh*, 435 Md. 207 (2013) (stating that the sufficiency of the knowledge that would have resulted from a reasonable investigation must also be tested to ensure a claimant could gain the knowledge necessary to bring a claim within the limitations period); *see also Georgia-Pac. Corp.*, 394 Md. at 90. The Note is simply the Plaintiffs' underlying loan which Plaintiffs could have obtained from public land records at any time.

Plaintiffs further contend that "the first time" they became aware of that Hudson City owned the loan was when Fannie Mae's lending guide was first brought to their attention in 2015 because the guide educated them on the securitization and lending process involving institutional lenders such as Hudson City. ECF No. 31 at 19. But the discovery rule does not turn on when the

Plaintiffs assert they in fact first learned of the claim. If that were the rule, any plaintiff could circumvent the limitations period merely by proffering grounds for protracted ignorance of his claims. Rather, the rule requires that this Court determine when a reasonable plaintiff exercising ordinary due diligence would have discovered the wrongdoing. *See Georgia-Pac. Corp.*, 394 Md. at 89. Clearly here, when Plaintiffs complained to the United States Government through the OTS about not being offered a HAMP loan modification in early 2011 only to learn that the purported lender, Hudson City, was assigned the Deed of Trust in 2012, Plaintiffs were put on sufficient notice to investigate its claims and prosecute them diligently.

Plaintiffs' Complaint also points to March 22, 2013, the date the Declaration of Substitution of Trustees was recorded, as the date "when Hudson's purported ownership interest . . . was recorded for public availability" for the Plaintiffs' discovery. ECF No. 1 at 14 n.15. But Plaintiffs by their own Complaint clearly knew as early as February 2011 that Hudson City claimed purported ownership interest in the Property. Furthermore, Hudson City's interest in the Property became "public" for any reasonably diligent plaintiff to find as early as May 2012, when the Assignment of the Deed was filed with the Prince George's County Clerk. ECF No. 1 at 13. Accordingly, Plaintiffs' reliance on a subsequently created document conveying the same information regarding Hudson City as the true noteholder does not change the analysis. Thus, for purposes assessing whether Plaintiffs' claims are time barred, they began to accrue in June 2012 when the purported fraud could have been uncovered.

With regard to the state law claims, including negligence and tortious interference with contract, Maryland law provides a three-year statute of limitations period, Md. Code Ann., Cts. & Jud. Proc., § 5–101; and claims under the FDCPA must be brought "within one year from the date on which the violation occurs." 15 U.S.C.A. § 1692k(d). Accordingly, those claims based

14

on Hudson City's alleged false assertions of ownership (Counts I, II, V, VI, VII, XII) that were filed almost five years after the alleged misrepresentations, on March 3, 2016 (ECF No. 1), are time barred.

**C.  Common Law Claims of "Wrongful" Acceleration of the Note, Civil Conspiracy, and Fraud during the Foreclosure Proceedings against All Defendants (Counts II, III, IV, XIII, XIV)[8]**

The Court next turns to the claims that rest on the foreclosure proceedings that Wells Fargo initiated on behalf of Hudson City. In Count II, Plaintiffs claim that Defendants Hudson City, Wells Fargo, and the substitute trustees, Alba, "wrongfully" accelerated the Note on January 24, 2012 before Hudson City was assigned the Deed. And according to Count III, Defendants Hudson City, Wells Fargo, and Alba "wrongfully" initiated foreclosure proceedings on May 22, 2012, and scheduled a foreclosure sale for February 19, 2016 "with no regard for the fact that Plaintiffs (notwithstanding the bogus denial of February 2011) . . . were still in the process of reaching a modification even up to February 16, 2016[.]" ECF No. 1 at 23–24; ECF No. 1 at 25. Plaintiffs incorporate those allegations into Counts IV, XIII and XIV, and further allege that Hudson City, Fannie Mae, Wells Fargo, and Alba continued to make false representations that Hudson City was the owner of the debt throughout the foreclosure proceedings when Fannie Mae was the rightful owner (Counts IV and XIII). ECF No. 1 at 31.

Those claims that turn on Wells Fargo and the Alba trustees initiating foreclosure proceedings "unlawfully" fail as a matter of law because, as Plaintiffs concede in their complaint, they defaulted on their loan thereby triggering Wells Fargo and Alba's right to initiate foreclosure proceedings. Additionally, where Plaintiffs' claims are solely conclusory allegations

---

[8] Count II of the Complaint alleges fraud during both the denial of the loan modification and in the foreclosure proceedings. ECF No. 1 at 24. Thus, the Court must address allegations in this Count that survive the statute of limitations.

of fraud with regards to all Defendants, they are insufficient to meet the heightened pleading standard.

Under Maryland law, "the person in possession of a note, either specially indorsed to that person or indorsed in blank, is a holder entitled generally to enforce that note." *Deutsche Bank Nat. Trust Co. v. Brock*, 430 Md. 714, 729–30 (2013). At the time of Foreclosure, Wells Fargo held the Note. *See* ECF No. 1 at 3–4, 36–37. Further, the Deed of Trust—assigned on May 25, 2012 to Hudson City—granted the lender or the lender's agent the authority to foreclose on the Property. *See* ECF No. 1 at 14. The terms of the Deed of Trust securing the mortgage states that "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower," and that Plaintiffs' obligations remain the same, regardless of whether the Note is sold, "[i]f the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser." ECF No. 1-2 at 12.

Plaintiffs admit that they defaulted on their mortgage in 2009. ECF Nos. 1 at 9, 11; *see also* ECF No. 1-5. At that juncture, "[a]s a holder in possession of the Note that contained a blank endorsement, either Wells Fargo as the servicing agent or any of the substitute trustees was empowered to enforce the Note" and legally entitled to accelerate of the Note and pursue foreclosure proceedings. *Andrews v. Brown*, 2016 WL 3017692, at *5 (Md. Ct. Spec. App. May 26, 2016) (citing *Brock*, 430 Md. at 732–33 (finding that whether the possessor of the note appointed trustees on its own authority or as agent on behalf of the lender "is a distinction without a difference" because in either capacity, the possessor has the authority to appoint the

substitute trustees who are then bound by the deed of appointment.")). Any claims based on Wells Fargo and Alba's post-2012 foreclosure proceedings, therefore, fail as a matter of law and must be dismissed.

Moreover, Plaintiffs' claims of civil conspiracy and fraud regarding false representations in the foreclosure proceedings and must be plead with particularity.[9] Fed. R. Civ. P. 9(b) ("[In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity . . . .") Subject to Rule 9(b)'s heightened pleading standard, Plaintiffs must allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison*, 176 F.3d at 784 (citation and internal quotation marks omitted).

Plaintiffs' allegations of fraudulent representations during the foreclosure proceedings rest solely on the bare claim that Fannie Mae owns the Note. Plaintiffs fail to marshal any particularized facts reflecting Fannie Mae's involvement as a lender or servicer.[10] ECF No. 1 at 3 n.3. *Cf. Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (vague generalization "that Wells Fargo has made and continues to make a false statement . . . that it intends to comply with its HAMP obligations" is not sufficiently particular to comply with Rule 9(b)'s heightened pleading requirements). To the contrary, and according to the Declaration of Substitution of Trustee attached and referenced in the Complaint, Hudson City became the noteholder on or before June 6, 2012. ECF No. 1 at 24; ECF No. 1-8 at 2. Further, Plaintiffs' own Complaint avers that Wells Fargo remained the Loan Servicer throughout the life of the

---

[9] Although Count II and III are labeled "negligent/wrongful acceleration of the note" and "negligence," in substance the Plaintiffs plead facts alleging fraud during the foreclosure proceedings. ECF No. 1 at 24–26.

[10] Where Plaintiffs allege that the fact that the allonge's blank indorsement is alone reason to conclude that it is fraudulent, their claim must fail. *Moussavi v. JPMorgan Chase Bank N.A.*, No. GJH-15-2094, 2016 WL 4442777, at *5 (D. Md. Aug. 19, 2016) (citing *Brock*, 430 Md. 714 at 729).

loan. *See* ECF No. 1 at 3–4, 36–37. Thus, those counts which rest on the threadbare allegation that Fannie Mae and not Hudson City owns the Note (Counts II, III, IV, XIII) must be dismissed.

That Plaintiffs claim to have continually pursued a modification even through February 2016 is of no moment. It is well settled that defaulting mortgagees have no legal right to obtain a HAMP modification. *Neil v. Wells Fargo Bank, N.A.*, 596 F. App'x 194, 196 (4th Cir. 2014) ("[T]here is no private right of action for an individual seeking a loan modification under HAMP or the Emergency Economic Stabilization Act of 2008 (EESA), under which the HAMP program was crafted.") (citing *Spaulding*, 714 F.3d at 775). Where, as here, Plaintiffs have defaulted on their mortgage payments, Wells Fargo as the loan servicer can, and did, seek legal remedy in the form of foreclosure proceedings. Accordingly, as pled, there is nothing in the above-enumerated Counts that legally state a cause of action.

**D.  FDCPA Claims against Wells Fargo, Hudson City, and Alba (Count VIII)[11]**

Plaintiffs further allege that Wells Fargo, Hudson City, and Alba violated the 15 U.S.C. § 1692(e) and 15 U.S.C. § 1692g of the FDCPA by falsely representing Hudson City's ownership of the note during the February 2016 foreclosure proceedings. Defendants Wells Fargo and Hudson City contend that the foreclosure proceedings were proper.

"To succeed on a FDCPA claim a plaintiff must demonstrate that '(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt [ ] collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.' " *Stewart*, 859 F. Supp. 2d at 759 (quoting *Dikun v. Streich*, 369 F. Supp. 2d 781, 784–85 (E.D. Va. 2005)). A "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of

---

[11] The Complaint alleges that unlawful behavior occurred during both the loan modification denial and the foreclosure proceedings. ECF No. 1 at 30–32. Thus, the Court must address allegations in this Count that survive the statute of limitations.

which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). "[C]reditors, mortgagors, and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA." *Offiah v. Bank of Am., N.A.*, No. DKC 13-2261, 2014 WL 4295020, at *5 (D. Md. Aug. 29, 2014) (quoting *Scott v. Wells Fargo Home Mortg. Inc.,* 326 F. Supp. 2d 709, 718 (E.D. Va. 2003)); *see also* 15 U.S.C.A. § 1692a(6). But law firms and lawyers acting in connection with a foreclosure may qualify as "debt collectors" under the FDCPA. *Stewart*, 859 F. Supp. 2d at 761 (citing *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 375 (4th Cir. 2006)).

The FDCPA "forbids the use of any false, deceptive, or misleading representation or means in debt collection and provides a non-exhaustive list of prohibited conduct," including threatening to take any action that cannot legally be taken or that is not intended to be taken. (*United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135 (4th Cir.1996) (quoting 15 U.S.C. § 1692e and 15 U.S.C. § 1692g). Plaintiffs contend that this is the conduct in which Defendants Hudson City, Wells Fargo, and Alba have engaged. ECF No. 1 at 30.

Although Plaintiffs classify both Wells Fargo and Hudson City as debt collectors within the meaning of the statute, the allegations in the Complaint indicate that Hudson City and Wells Fargo acted as a creditor and servicer respectively. Thus, Wells Fargo and Hudson City are statutorily exempt from FDCPA liability. *See Ademiluyi v. PennyMac Mortgage Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 525 (D. Md. 2013) (citing 15 U.S.C.A. § 1692a(6)). Defendant Alba, while subject to the FDCPA as substitute trustees foreclosing on a deed of trust, was legally entitled to accelerate of the Note and pursue foreclosure proceedings as explained above. S*ee supra* Part II.C; s*ee also Andrews*, 2016 WL 3017692, at *5 (citing *Brock,* 430 Md. at

732–33). Plaintiffs, therefore, have not stated an FDCPA violation, and Count VIII must be dismissed.

**E.  MCDCA Claims against Wells Fargo, Hudson City, and Alba (Count V)**

Plaintiffs claim that the "fraudulent and conspiratorial acts [of Defendants Wells Fargo, Hudson City, and Alba] occurred in the process of collecting a delinquent mortgage debt and constitutes a violation of the MCDCA." ECF No. 1 at 27. Wells Fargo and Hudson City move to dismiss on the ground that Plaintiffs' factual allegations are insufficient to establish a violation of the MCDCA. ECF No. 24-1 at 13–14.

Under the MCDCA, a debt collector may not "claim, attempt, or threaten to enforce a right with knowledge that the right does not exist." Md. Code Ann., Com. Law § 14–202(8). The MCDCA "protects consumers against certain threatening and underhanded methods used by debt collectors in attempting to recover on delinquent accounts." *Shah v. Collecto, Inc.*, No. DKC–04–4059, 2005 WL 2216242, at *10 (D. Md. Sept. 12, 2005) (quotation omitted). The key to prevailing on a claim of MCDCA is to demonstrate that the defendant "acted with knowledge as to the *invalidity* of the debt." *Pugh v. Corelogic Credco, LLC*, No. DKC 13–1602, 2013 WL 5655705, at *4 (D. Md. Oct.16, 2013) (citing *Stewart v. Bierman*, 859 F.Supp.2d 754, 769 (D. Md. 2012) (emphasis in original) (citations omitted) (dismissing plaintiff's MCDCA claim for failure to demonstrate defendant's knowledge)); *accord Lembach v. Bierman*, 528 F. App'x 297, 304 (4th Cir. 2013) ("Maryland courts have consistently interpreted the MCDCA to require plaintiffs to allege that defendants acted with knowledge that the 'debt was invalid, or acted with reckless disregard as to its validity.'") (quoting *Shah v. Collecto, Inc.*, No. DKC 2004–4059, 2005 WL 2216242, at *11 (D. Md. Sept. 12, 2005)). "An MCDCA claim properly challenges certain proscribed conduct, but it is not a mechanism for attacking the validity of the debt itself."

*Pruitt v. Alba Law Grp., P.A.*, No. DKC 15-0458, 2015 WL 5032014, at *6 (D. Md. Aug. 24, 2015).

Viewing the Complaint as a whole, the Okoros' MCDCA claim appears to rely entirely on the premise that Defendants had no right, and knew they had no right, to collect the mortgage debt because the Note has a blank indorsement and the Deed was assigned to Hudson City after the denial of the HAMP modification and the acceleration of the Plaintiffs' loan. ECF No. 1 at 8, 22, 24. Plaintiffs fail to allege that Defendants Wells Fargo, Hudson City, and Alba had any reason to doubt the validity of the debt itself. *See Lembach*, 528 F. App'x at 304–05 (dismissing MCDCA claim arising from unauthorized signatories because "the MCDCA does not allow for recovery for an error in the process of collecting this legitimate and undisputed debt"). In fact, the Okoros concede that they defaulted in 2009. ECF No. 1 at 9, 11; *see also* ECF No. 1-5. Also, even where Plaintiffs contest Hudson City's ownership of the Note, Plaintiffs acknowledge that Hudson City was at a minimum a servicer of a valid debt. ECF No. 1 at 15–16.

That allegedly improper foreclosure documents were filed does not alter Defendants' right to foreclose on the property when the Plaintiffs defaulted on the mortgage. *Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 464 (D. Md. 2013) (citing *Stovall v. SunTrust Mortg., Inc.,* No. RDB–10–2836, 2011 WL 4402680 at *9 (D. Md. Sept. 20, 2011) (even assuming the defendants did not abide by HAMP guidelines and the trustee filed improper foreclosure documents, plaintiff's default triggered the right to foreclosure on the home)). Here, Defendants maintained foreclosure rights after the Okoros' default in 2009. ECF Nos. 1 at 9, 11; *see also* ECF No. 1-5. Accordingly, the Okoros' MCDCA claim cannot be sustained.

**F.   RESPA Claims against Wells Fargo (Counts IX–XII)**

Finally, the Court turns to Plaintiffs' RESPA counts. Plaintiffs claim that Wells Fargo

violated RESPA when it failed to respond to the Plaintiffs' June 14, 2014 purported qualified

written request.[12] ECF No. 1 at 15; *see also* ECF No. 1-9 at 2. Wells Fargo asserts that the

RESPA claim must be dismissed because Plaintiffs fail to allege actual damages arising from

Wells' failure to respond. ECF No. 24–1, at 17–21.

Under § 2605(f), an individual plaintiff must plead either actual damages as a result of

the RESPA violation or "a pattern or practice of noncompliance" with RESPA requirements. 12

U.S .C. § 2605(f)(1); *Minson v. CitiMortgage, Inc.*, No. DKC 12–2233, 2013 WL 2383658, at *5

(D. Md. May 29, 2013). Plaintiffs complain that their damages include: (1) an inability to

properly identify the holder of the Note and being rejected for loan modification in 2009; (2) the

loss of "significant investments of time and money including without limitation, unnecessary

bankruptcy filings which caused a substantial reduction in their credit scores, and the attendant

humiliation, legal fees, consultant fees, auditor fees, counseling costs, appraisal fees and such

other similar costs and expenses"; (3) "embarrassment and humiliation and damage to their

credit as a result of the unnecessary bankruptcy filings"; (4) "mental pain and anguish, loss of

sleep, worry, anxiety, anger and unhappiness"; and (5) Henrietta Okoro's high blood pressure

and headaches. ECF No. 1 at 17.

As an initial matter, Plaintiffs claimed damages which *predate* the alleged RESPA

violations cannot constitute actual damages for purposes of the RESPA counts. With regard to

their "emotional distress" claims and fees associated with their filing bankruptcy, Plaintiffs do

not provide any causal connection between Wells Fargo's alleged failure to respond and their

---

[12] In Plaintiffs' response to the motions to dismiss, they contend they alleged a different and separate
RESPA violation in their "Amended Adversary Complaint" that accrued on March 3, 2016. ECF No. 32
at 2.This Court finds no such claim in the Complaint (ECF No. 1) or Amended Complaint. ECF No. 12.

initiation of bankruptcy proceedings or any other pecuniary damages. Accordingly, because Plaintiffs' Complaint fails explain how their damages are arise from alleged violations of RESPA, Counts IX–XII must be dismissed. *See Radisi v. HSBC Bank USA, Nat. Ass'n*, No. 5:11 CV 125–RLV, 2012 WL 2155052, at *5 (W.D.N.C. June 13, 2012) ("Plaintiff's assertion of damages without any supporting facts as to how he was damaged by the failure to respond to the QWR's is insufficient to establish a claim for violation of RESPA."); *Willis v. Bank of Am. Corp.*, No. ELH–13–02615, 2014 WL 3829520, at *31 (D. Md. Aug. 1, 2014) (finding insufficient under RESPA the conclusory assertion that actual damages arose from the failure to adequately respond to a letter).

Plaintiffs counter that Wells Fargo's failure to respond to Plaintiffs' qualified written request damaged Plaintiffs because they were unable to verify the holder of the Note. ECF No. 1 at 33. Under RESPA, however, Wells Fargo is not obligated to provide Plaintiffs with which lending institution holds the note. Rather RESPA compels provision of "a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer." 12 U.S.C. § 2605(e)(2). In this way, RESPA insures transparency regarding the particulars behind regarding servicing of the note, not general inquiries regarding the validity of the note. *See, e.g.*, *Offiah*, 2014 WL 4295020, at *3; *Ward v. Security Atl. Mortg. Electronic Registration Systems, Inc.*, 858 F. Supp. 2d 561, 574–75 (E.D.N.C. 2012) (finding that a letter seeking, *inter alia*, copies of loan documents, assignments of the deed of trust and promissory note, and a loan transactional history did not qualify as a valid QWR). This argument, therefore, is equally unavailing. Consequently, because Plaintiffs have failed to allege RESPA violations, Counts IX, X, XI and XII must be dismissed.

## IV.    CONCLUSION

Accordingly, this Court will GRANT the Defendants' motions to dismiss and will

DISMISS this case. A separate order will follow.


 10/6/2016                                                          /S/
Date                                              Paula Xinis
                                                  United States District Judge